IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELISSA MESENBRING, individually and as ) <br> The Administrator of the Estate Derek Mesenbring, ) <br> deceased, MELISSA MESENBRING as mother, ) <br> parent and guardian of CANDACE JO ) <br> MESENBRING and JACKSON MICHAEL ) <br> MESENBRING, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> INDUSTRIAL FUMIGANT COMPANY, LLC, ) <br> and ROLLINS, INC., ) <br> ) <br> Defendants. ) | Case No.   19 C 8013 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Melisa Mesenbring individually, as independent administrator of the estate of her deceased husband Derek Mesenbring ("Derek"), and as mother, parent, and guardian of her children Candace Jo and Jackson Michael Mesenbring filed suit in the Circuit Court of Cook County, Illinois, for wrongful death against her husband's former employer defendant Industrial Fumigant Company, LLC, ("IFC") and its parent company Rollins, Inc., after Derek died after being exposed to a lethal dose of the fumigant methyl bromide while working at IFC's Chicago Ridge facility.   Defendants removed the case to this court.   Count I alleges "Negligence Wrongful Death" against IFC.   Count II is a "Negligence Survival Action" against IFC.   Count III is a strict liability wrongful death claim against IFC and Count IV is a strict liability survival claim against IFC.   Counts V-VIII allege the same claims against defendant Rollins.   Because IFC began paying plaintiff workers' compensation benefits even before the instant suit was filed, on March 16, 2023, plaintiff stipulated that the claims against IFC were barred by the exclusive

remedy provision of the Illinois Workers' Compensation Act, 820 ILCS 305/5(a), and dismissed those claims with prejudice, leaving Rollins as the lone defendant. Rollins has moved for summary judgment. For the reasons described below, that motion is granted.

## BACKGROUND

IFC is a pest management company specializing in the food, beverage, and commodities industries. It was employee owned until 2005 when it was purchased by Rollins and became one of its "Specialty Brands." At the time of the incident in question, Derek worked for IFC as a territory manager int its Chicago Ridge Facility. As part of his job duties, Derek performed industrial pest control fumigations. On the morning of October 23, 2017, Derek was scheduled to fumigate a trailer for a customer with the methyl bromide fumigant. The Chicago Ridge Facility is a single building separated into a warehouse section, where fumigants and other equipment were stored, and an office section where Derek and other employees performed administrative tasks. The two sections were separated by walls and a door, neither of which were "air tight." Before leaving for the jobsite, Derek entered the warehouse section and transferred the methyl bromide he needed from a large cylinder to a smaller cylinder using a transfer hose. He then left to perform the job.

Apparently, Derek failed to remove the transfer hose from the larger cylinder and replace the safety cap and safety bonnet on the larger cylinder. He apparently also failed to close the valve on the larger cylinder.[1] Plaintiff alleges that methyl bromide was released from the larger cylinder while Derek was at the job site. After he finished the job, Derek returned to the

---

1 The court uses the word "apparently" because plaintiff does not agree to these facts. There is no question, however, that the larger cylinder was found in the described condition after Derek was discovered sick in the office, and there is no evidence that anyone else used methyl bromide or entered the warehouse that day.

2

facility, but rather than return the unused methyl bromide to the larger cylinder, he left the smaller cylinder in the vehicle and entered the office area where he completed some paperwork and began painting the office doors. Unbeknownst to him, Derek was inhaling a toxic dose of methyl bromide that ultimately led to his death.

## DISCUSSION

Rollins has moved under Fed. R. Civ. P. 56 for summary judgment on all counts. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden, and the court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the nonmovant must do more than raise "some metaphysical doubt as to the material facts." Id. at 586. Rather, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

Generally, "a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." United States v. Best-Foods, 524 U.S. 51, 61 (2006). This is a general principle of corporate law "deeply ingrained in our economic and legal systems." Id. Rollins, which is unquestionably IFC's parent, relies on this general principle in arguing that it is entitled to judgment on all counts. In Forsythe v. Clark USA, Inc., 224 Ill. 2d 274, 290-91 (2007), the Illinois Supreme Court adopted a "direct participation" exception to the general rule:

> We hold that direct participant liability is a valid theory of
> recovery under Illinois. Where there is evidence sufficient to

3

> prove that a parent company mandated an overall business and budgetary strategy <u>and</u> carried that strategy out by its own specific direction or authorization, surpassing control exercised as a normal incident of ownership in disregard for the interests of the subsidiary, that parent could face liability. (Emphasis in original)

The key elements identified by <u>Forsythe</u> to the application of direct participant liability are "a parent's specific direction or authorization of the manner in which an activity is undertaken and foreseeability." Thus, if a parent specifically directs an activity where injury is foreseeable it can be held liable. <u>Id.</u> Likewise, if a parent "mandates an overall course of action and then authorizes the manner in which specific activities contributing to that course of action are undertaken, it can be liable for foreseeable injuries." <u>Id.</u> The court stressed, however, that "allegations of mere budgetary mismanagement alone do not give rise to the application of direct participant liability." <u>Id.</u>

In the instant case, plaintiff argues that Rollins directly participated in Derek's injury. Specifically, plaintiff argues that Rollins imposed unrealistic annual financial targets for IFC as well as Rollins' other Specialty Brands (such as Orkin), resulting in IFC controlling expenses to increase profits. Plaintiff also argues that the evidence shows that Rollins imposes numerous operational, safety, training, accounting, and fiscal controls over IFC, including the ability to prevent them from participating in certain business practices. For example, Rollins provides a menu of services to all its Specialty Brands, including legal consultation, risk management, insurance, fleet management and training. Rollins charges each of its subsidiaries, including IFC, for these services. Rollins also maintains an "approval level guide" that applies to IFC. According to plaintiff, under that guide if IFC wanted to make a field operation service equipment purchase in excess of $10,000 it needed Rollins's approval. That description is not,

4

however, entirely accurate. IFC could make any purchase it wanted. It is only if it wanted Rollins to capitalize the payment that it needed Rollins's approval.

Plaintiff argues that this "eccentric" budgetary management indicates Rollins's direct participation in Derek's death. Plaintiff argues that given the capital restraints placed on IFC it was only a matter of time before a serious accident occurred.

The problem with plaintiff's position is that none of the evidence shows that Rollins exerted any control over or participated in any way with how IFC trained its employees in the use of fumigants or otherwise mandated or authorized any of IFC's safety protocols. It is undisputed that IFC had developed its own policies and procedures for handling methyl bromide and other fumigants long before Rollins purchased it. It is also undisputed that IFC continued to implement is own policies and procedures regarding the use of fumigants from the time it was purchased by Rollins through the date of Derek's accident. It is undisputed that Derek received training from IFC on IFC's policies and protocols with respect to the use of fumigants and there is no evidence that Rollins's exercised any authority that would override IFC's policies. In this respect, the case is unlike Forsythe, where the court had found evidence that the parent company "knew both that the budgetary reductions involved here had come in large part from controllable costs such as education, training, repairs, and equipment maintenance, and that these restrictions were compromising safety at the refinery." Forsythe, 224 Ill. 2d at 295. That evidence suggested that the parent company was acting in a manner that superseded the discretion and interest of the subsidiary. Id.

There is no such evidence in the instant case, and certainly no evidence that Rollins exerted extraordinary control over IFC in a manner that would affect its safety procedures and

5

protocols. There is simply nothing to suggest that Rollins's conduct contributed to Derek's accident in any way or that Rollins's conduct specifically directed an activity that made the accident foreseeable.

Plaintiff places great reliance on certain directives from Rollins's Health and Safety Department, but the evidence shows that those directives were simply reminders about OSHA's reporting requirements, and certain general safety practice policies prepared for use by all of Rollins's subsidiary. These practices, such as use of ladders, alert driving, and use of cell phones were provided as part of the risk management and regulatory affairs services that Rollins, like many parent companies, provided to its subsidiaries. They in no way establish that the alleged wrong can seemingly be traced to Rollins through the conduct of its own personnel and management. Northbound Grp., Inc. v. Norvax, Inc., 795 F. 3d 647, 651 (7th Cir. 2015).

Consequently, the undisputed evidence establishes that IFC manages its day-to-day business without eccentric or undue influence from Rollins, and that the control Rollins exerted over IFC was normal and incident to ownership. For these reasons, Rollins's motion for summary judgment is granted.

## **CONCLUSION**

For the reasons described above, defendant Rollins's motion for summary judgment [160] is granted.

**ENTER:**

**Robert W. Gettleman
United States District Judge**

**DATE:** **July 14, 2023**